UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES D. GARRITY,

                    Petitioner,

            -v.-

CREDIT SUISSE SECURITIES (USA) LLC,

                    Respondent.

23 Civ. 1457 (KPF)

**OPINION AND ORDER**

23 Civ. 1830 (KPF)

CREDIT SUISSE SECURITIES (USA) LLC,

                    Petitioner,

            -v.-

JAMES D. GARRITY,

                    Respondent.

KATHERINE POLK FAILLA, District Judge:

On February 2, 2023, a FINRA arbitral panel issued an award (the "Award") in the matter of *James D. Garrity* v. *Credit Suisse Securities (USA) LLC*, FINRA Case No. 20-03957 (the "Arbitration"). The parties to the Arbitration then filed competing lawsuits in this District seeking to confirm, or to vacate, the Award; both cases were assigned to this Court, and because they are effectively mirror-images of each other, the Court refers only to the earlier-filed case except where explicitly noted. Now pending before the Court are Petitioner James D. Garrity's motion to confirm the Award, and Respondent Credit Suisse Securities (USA) LLC's ("Credit Suisse") competing motion to vacate the Award.

For the reasons set forth in the remainder of this Opinion, the Court grants

Petitioner's motion to confirm and denies Respondent's motion to vacate.

## BACKGROUND[1]

### A.    Factual Background

### 1.    Petitioner's Employment and Compensation

Respondent Credit Suisse is a registered broker-dealer and an indirect

subsidiary of Credit Suisse Group AG ("CSGAG").  (Resp. 56.1 ¶ 31).  Credit

Suisse formerly offered financial services in the United States to ultra-high and

high net worth individuals and family offices through its Private Banking unit

("PB-USA").  (*Id.* ¶ 33).  As a broker-dealer, Respondent is a member of the

Financial Industry Regulatory Authority ("FINRA").  (Pet. 56.1 ¶ 2).  Petitioner

James D. Garrity was an investment advisor ("Relationship Manager" or "RM")

---

[1]    The facts set forth in this Opinion are drawn from the parties' submissions in
connection with their cross-motions for summary judgment.  The Court primarily
sources facts from Petitioner's Local Rule 56.1 Statement ("Pet. 56.1" (Dkt. #16)) and
Respondent's Local Civil 56.1 Response to Petitioner's 56.1 Statement ("Resp. 56.1"
(Dkt. #18)); from the Award (Dkt. #1-1); and from the Affirmation of Barry R. Lax ("Lax
Aff." (Dkt. #14)) and the exhibits attached thereto.

Citations to a party's Rule 56.1 Statement incorporate by reference the documents and
testimony cited therein.  Where a fact stated in a movant's Rule 56.1 Statement is
supported by evidence and controverted only by a conclusory statement by the
opposing party, the Court finds that fact to be true.  *See* Local Civil Rule 56.1(c) ("Each
numbered paragraph in the statement of material facts set forth in the statement
required to be served by the moving party will be deemed to be admitted for purposes of
the motion unless specifically controverted by a correspondingly numbered paragraph
in the statement required to be submitted by the opposing party."); *id.* at 56.1(d) ("Each
statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each
statement controverting any statement of material fact, must be followed by citation to
evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

For ease of reference, the Court refers to Petitioner's memorandum of law in support of
his motion for summary judgment as "Pet. Br." (Dkt. #15); to Respondent's
memorandum of law in opposition to Petitioner's motion and in support of its cross-
motion for summary judgment as "Resp. Opp." (Dkt. #19); to Petitioner's reply
memorandum of law and opposition to Respondent's cross-motion as "Pet. Reply" (Dkt.
#23); and to Respondent's reply memorandum of law as "Resp. Reply" (Dkt. #28).

employed by Credit Suisse in PB-USA from 2009 until December 2, 2015. (*Id.* ¶ 3).

The parties' dispute arises from Respondent's cancellation of Petitioner's deferred compensation when his employment at Credit Suisse ended. As is common in the financial services industry, Petitioner was required to defer a portion of his monthly compensation, primarily in the form of equity and cash awards ("Awards"). (Pet. 56.1 ¶ 4). Each Award was governed by an Award Certificate and the CSGAG Master Share Plan (the "Plan"). (*Id.*). Pursuant to Section 4 of the Award Certificate, Petitioner's deferred compensation vested immediately in the event of termination without cause and was cancelled immediately in the event of resignation. (*Id.* ¶ 5).

On October 20, 2015, Credit Suisse announced that it was closing PB-USA and terminating its non-RM workforce. (Pet. 56.1 ¶ 6). Credit Suisse concurrently announced that it had entered into an "exclusive recruiting agreement" to transition RMs to Wells Fargo and indicated that RMs had until December 7, 2015, to commit to Wells Fargo. (*Id.* ¶ 6; Resp. 56.1 ¶ 6). The next day, Credit Suisse notified the RMs that it intended to characterize each of their terminations — which, it bears noting, were precipitated by Credit Suisse's closure of their division — as a "voluntary resignation," either to join Wells Fargo pursuant to the "exclusive recruiting agreement," or to seek employment with another third party. (Pet. 56.1 ¶ 7). Once an RM departed, any unvested deferred awards would be cancelled immediately. (Resp. 56.1 ¶ 7). However, Credit Suisse RMs who joined Wells Fargo would receive an

"Onboarding Award," which mirrored the value amount of their cancelled deferred awards. (*Id.*). If an RM did not join Wells Fargo, the Onboarding Award was not available. (*Id.*).

On December 2, 2015, Petitioner sent an email to his manager, attaching a letter informing the manager of Petitioner's "resignation effective immediately." (Resp. 56.1 ¶ 9). The next day, Petitioner joined Morgan Stanley. (Pet. 56.1 ¶ 8). As required by FINRA, Credit Suisse subsequently filed a Uniform Termination Notice for Securities Industry Registration ("Form U-5"), notifying FINRA that Petitioner's employment at Credit Suisse had ended and that his termination had been "voluntary." (Resp. 56.1 ¶¶ 99, 100). Thereafter, on December 30, 2015, Credit Suisse notified Petitioner that his deferred compensation awards had been cancelled retroactive to December 3, 2015. (*Id.* ¶ 97). Petitioner's 28,896 unvested shares were cancelled, as was $55,994 in unvested non-equity cash awards. (*Id.* ¶ 98).

On December 2, 2020, Petitioner commenced the Arbitration, alleging claims based upon Credit Suisse's cancellation of Petitioner's deferred compensation, including breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, unjust enrichment, and false and misleading statements in Petitioner's Form U-5. (Pet. 56.1 ¶ 11). Petitioner claimed $1,124,836 in damages and requested that his Form U-5 be amended to accurately reflect his termination. (*Id.*; Resp. 56.1 ¶ 121). Petitioner, a resident of Maryland, filed with FINRA's New York office and selected an arbitration in New York, where his branch (as well as Credit Suisse's U.S.

wealth management business and U.S. headquarters) was located. (Pet. 56.1 ¶ 12; Resp. 56.1 ¶ 12). FINRA administratively assigned the arbitration to its District of Columbia office. (*Id.*).

### 2. The Arbitration

Petitioner and Respondent each signed and submitted a Uniform FINRA Arbitration Submission Agreement on December 2, 2020, and January 22, 2021, respectively, agreeing that:

> The undersigned parties ("parties") hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related cross claims, counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure. The parties agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement. The parties further agree that a judgment and any interest due thereon, may be entered upon such award(s) and, for these purposes, the parties hereby voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment.

(Pet. 56.1 ¶ 16).

Petitioner submitted his Statement of Claim on December 2, 2020. (Pet. 56.1 ¶ 16). In it, he asserted that Credit Suisse had breached the terms of his Award Certificates when it failed to vest his deferred compensation, because Petitioner had been involuntarily discharged, whether actually or constructively. (Resp. 56.1 ¶ 107). Respondent submitted a Statement of Answer and Counterclaims on January 22, 2021, denying the substantive allegations and asserting defenses, including that Petitioner's action was barred by the applicable statute of

limitations.  (Pet. 56.1 ¶ 18; Resp. 56.1 ¶ 109).  Petitioner submitted his Statement of Answer and Affirmative Defenses to the Counterclaims on February 11, 2021.  (Pet. 56.1 ¶ 19).

On March 16, 2021, FINRA appointed Marni E. Byrum, Julius P. Terrell, and Martin V. Franks (collectively, the "Panel"), who subscribed and swore to the oath of arbitration as required by law.  (Pet. 56.1 ¶ 20). On April 22, 2021, during the initial pre-hearing conference, the parties expressly accepted the composition and authority of the Panel.  (*Id.*).

On December 10, 2021, prior to presentation of Petitioner's case, Respondent moved to dismiss all of Petitioner's claims, asserting that they were time-barred.  (Pet. 56.1 ¶ 20).  In particular, Respondent argued that Petitioner, as a former employee of Credit Suisse, was required to arbitrate his claims pursuant to the Credit Suisse's Employment Dispute Resolution Program ("EDRP").  (Resp. 56.1 ¶ 21). As relevant here, the EDRP requires that a request for arbitration be "filed within six months of the time of the complained of action or actions took place, or during such longer period as is allowed by any statute of limitations applicable to the Employment-Related Claim in question," or the employee "will forfeit any right to make use of the Program and will be foreclosed from bringing an action in any court[.]"  (*Id.*).  Having been filed five years after the alleged breach of contract, Respondent argued that Petitioner's claims were barred by incorporation of the applicable

statute of limitations of the District of Columbia, Maryland, or New York. (*Id.*).[2]

Petitioner opposed Respondent's motion to dismiss on multiple grounds, including that it violated FINRA's Rule 13504 (which, generally speaking, prohibited motions to dismiss prior to the conclusion of the claimant's or counterclaimant's case in chief); that statutes of limitations are generally inapplicable in arbitration; and that, to the extent that any statute of limitation was applicable, New York's six-year statute of limitations applied to the claims.  (Pet. 56.1 ¶ 22).

On March 28, 2022, the Panel denied Credit Suisse's Motion to Dismiss with prejudice.  (Pet. 56.1 ¶ 23).  On June 28, 2022, Petitioner and Respondent submitted pre-hearing briefs.  (Resp. 56.1 ¶ 25).  The arbitration proceedings took place by Zoom videoconference over seventeen days, beginning on August 15, 2022, and concluding on December 2, 2022.  (Pet. 56.1 ¶ 25).  The parties called or designated prior testimony from sixteen witnesses, including three experts, and

---

[2]     In the arbitration proceeding, Respondent argued that three sets of statutes of limitations potentially applied to Petitioner's claims.  Respondent first argued that because the District of Columbia was the seat of the arbitration, its three-year statute of limitations applied.  (Resp. Opp. 10).  Alternatively, Respondent argued that because Petitioner was a resident of Maryland, Maryland's three-year statute of limitations applied.  (*Id.*).  Finally, Respondent argued that because the choice-of-law clause in the EDRP specified that New York law governed the substantive claims and interpretation of the contracts on which Petitioner sued, New York's statute of limitations applied.  (*Id.* at 16-17).  Respondent maintained, however, that if the Panel chose to apply New York's statute of limitations, its general six-year window did not govern because New York's borrowing statute mandated that the shorter statute of limitations of the state where Petitioner resided at the time of the alleged wrong — in this case, Maryland — governed. (*Id.*).

introduced hundreds of exhibits.  (*Id.* ¶ 26).  Thereafter, the Panel took closing arguments and accepted post-hearing briefs from both parties. (*Id.* ¶ 27).

On November 28, 2022, after Petitioner's case in chief concluded, Respondent filed a letter and memorandum of law pursuant to FINRA Rule 13504(a)(8) and (b), seeking the Panel's permission to renew or reargue its motion to dismiss.  (Resp. 56.1 ¶ 24).  Petitioner orally opposed the application, arguing that the Panel could not entertain any motion that had already been denied with prejudice.  (*Id.* ¶ 116).  The Panel subsequently denied the motion to file the renewed motion to dismiss, but authorized Respondent to submit any new arguments in support of its motion with its post-hearing submission.  (*Id.* ¶¶ 24, 117). Respondent did so on December 9, 2022.  (*Id.* ¶ 118).

After "read[ing] the pleadings and other materials filed by the parties," the Panel issued the Award on February 2, 2023.  (Lax Aff., Ex. A).  Among other conclusions, the Panel stated that "[a]fter due deliberation, the Panel denied the renewed Motion to Dismiss."  (*Id.*).  In addition, the Panel agreed with Petitioner that he was entitled to additional compensation; it ordered Respondent to pay Petitioner a total of $1,347,719.09 in compensatory damages and pre-judgment interest, a figure that reflected a set-off of $34,150 in compensatory damages that the Panel found Petitioner owed to Respondent.  (Pet. 56.1 ¶ 29).

### B.    Procedural Background

Petitioner commenced the instant action on February 22, 2023, by filing a Petition to Confirm an Arbitration Award and Enter Judgment Thereon pursuant to Section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9 (the "Petition").  (Dkt. #1).  The Petition seeks to confirm the Award, along with pre-judgment interest and post-judgment interest pursuant to N.Y. C.P.L.R. § 5004 and 28 U.S.C. § 1961, respectively.

This Court treats proceedings to confirm an arbitration award as akin to a motion for summary judgement.  *See D.H. Blair & Co., Inc.* v. *Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006).  Accordingly, on February 23, 2023, the Court ordered Petitioner to move for confirmation of the Award in accordance with Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules of United States District Courts for the Southern and Eastern Districts of New York.  (Dkt. #4).[3]

On March 24, 2023, Petitioner filed a motion for summary judgment confirming the Award, as well as an accompanying Local Rule 56.1 statement of material facts.  (Dkt. #15 (Pet. Br.), 16 (Pet. 56.1)).  Respondent filed an opposition to Petitioner's motion and cross-moved for summary judgment vacating the Award on April 24, 2023.  (Dkt. #19 (Resp. Opp.)).  Respondent also filed its own Local Rule 56.1 statement of material facts on the same day.  (Dkt. #18 (Resp. 56.1)).  Petitioner filed a reply in further support of its motion

---

[3]    Respondent filed its own petition to vacate the Award on March 2, 2023.  (23 Civ. 1830 Dkt. #1).  That case was assigned to this Court on March 9, 2023.  (23 Civ. 1830 Minute Entry for March 9, 2023).

to confirm the Award and in opposition to Respondent's cross-motion on May 11, 2023. (Dkt. #23 (Pet. Reply)). Respondent filed a reply in further support of its cross-motion to vacate the Award on May 25, 2023. (Dkt. #28 (Resp. Reply)).

## DISCUSSION

### A. Applicable Law

#### 1. Judicial Review of Arbitration Awards

Federal law provides for vacatur of arbitration awards "only in very unusual circumstances." *First Options of Chicago, Inc.* v. *Kaplan*, 514 U.S. 938, 942 (1995). "Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans LLC* v. *Sutter*, 569 U.S. 564, 569 (2013) (quoting *Eastern Assoc. Coal Corp.* v. *Mine Workers*, 531 U.S. 57, 62 (2000)). The Second Circuit has underscored this point, holding that courts should exercise an "extremely deferential standard" when reviewing arbitration awards. *Porzig* v. *Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007). Significantly, "[a]rbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Rich* v. *Spartis*, 516 F.3d 75, 81 (2d Cir. 2008).

The FAA governs awards rendered in a FINRA arbitration. *See Egan* v. *Barry E. Loughrane Revocable Tr.*, No. 22 Civ. 497 (KPF), 2022 WL 1597692,

at *2 (S.D.N.Y. May 19, 2022).  The FAA creates "mechanisms for enforcing arbitration awards: a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it."  *Hall St. Assocs., L.L.C.* v. *Mattel, Inc.*, 552 U.S. 576, 582 (2008) (citing 9 U.S.C. §§ 9-11).  A court must grant a motion to confirm an arbitration award unless the award "is vacated, modified, or corrected" under § 10 or § 11.  *Id.*  There are four statutory grounds for vacatur:

> (1)    where the award was procured by corruption, fraud, or undue means;
>
> (2)    where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3)    where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4)    where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Recognizing that mischief can inhere in an overly broad interpretation of the FAA's vacatur provision, the Supreme Court has made clear that the only question under § 10(a)(4) "is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong."  *Oxford Health Plans*, 569 U.S. at 569.  The Second Circuit has likewise "'consistently accorded the narrowest of readings' to section 10(a)(4)."  *Jock* v. *Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011) (quoting *ReliaStar Life Ins. Co.*

*of N.Y.* v. *EMC Nat. Life Co.,* 564 F.3d 81, 85 (2d Cir. 2009)), *cert. denied*, 565 U.S. 1259 (2012).

In addition, the Second Circuit has held that a court may vacate an award if the arbitrator "has acted in manifest disregard of the law," *Porzig*, 487 F.3d at 139, or "where the arbitrator's award is in manifest disregard of the terms of the parties' relevant agreement," *Schwartz* v. *Merrill Lynch & Co., Inc.*, 665 F.3d 444, 452 (2d Cir. 2011) (internal quotation marks and alterations omitted).  However, a court may vacate on those bases only in "those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent."  *T.Co Metals, LLC* v. *Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010).  Thus, in order "[t]o succeed in challenging an award under the manifest disregard standard, a party must make a showing that the arbitrators knew of the relevant legal principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it."  *Seneca Nation of Indians* v. *New York*, 988 F.3d 618, 626 (2d Cir. 2021) (internal quotation marks omitted); *accord Westerbeke Corp.* v. *Daihatsu Motor Co.*, 304 F.3d 200, 208-09 (2d Cir. 2002).  That is, "to intentionally disregard the law, the arbitrator must have known of its existence, and its applicability to the problem before him."  *T.Co Metals, LLC*, 592 F.3d at 339 (quoting *Stolt-Nielsen SA* v. *AnimalFeeds Int'l Corp.*, 548 F.3d 85, 93 (2d Cir. 2008)).

An award should be enforced, "despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached."

12

*T.Co Metals LLC*, 592 F.3d at 339. A "barely colorable justification" exists so long as the arbitrators had reasoning on which they "could have justifiably rested their decision." *Willemijn Houdstermaatschappij, BV* v. *Standard Microsystems Corp.*, 103 F.3d 9, 13-14 (2d Cir. 1997) (finding that an offered justification satisfied the "barely colorable" standard because it presented no error "that an average person qualified to serve as an arbitrator should have instantaneously perceived and corrected"), *cited in Smarter Tools Inc.* v. *Chongqing SENCI Imp. & Exp. Trade Co.*, 57 F.4th 372, 383 (2d Cir. 2023).

### 2. Summary Judgment Under Federal Rule of Civil Procedure 56

As noted above, courts treat an application to confirm or vacate an arbitral award as akin to a motion for summary judgment. *City of New York* v. *Mickalis Pawn Shop, LLC*, 645 F.3d 114, 136 (2d Cir. 2011) (citing *D.H. Blair & Co.*, 462 F.3d at 109). A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, "[a] motion for summary judgment may properly be granted ... only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." *Rogoz* v. *City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (quoting *Kaytor* v. *Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)). "[A] fact is material if it 'might affect the outcome of the suit under the governing law.'" *Royal Crown Day Care LLC* v. *Dep't of Health & Mental Hygiene of City of N.Y.*, 746 F.3d 538, 544 (2d Cir. 2014) (quoting *Anderson* v. *Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986)).  "[A] dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Negrete* v. *Citibank, N.A.*, F. Supp. 3d, No. 15 Civ. 7250 (RWS), 2017 WL 758516, at *6 (S.D.N.Y. Feb. 27, 2017) (quoting *Liberty Lobby*, 477 U.S. at 248).  And where, as here, "parties file cross-motions for summary judgment, ... each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration."  *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks omitted and alteration adopted) (quoting *Morales* v. *Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

## B.    Analysis

Respondent advances two arguments for vacating the Award.  *First*, Respondent argues that the Panel exceeded its authority and manifestly disregarded the law when it failed to dismiss Petitioner's claims as time-barred. (Resp. Opp. 16).  *Second*, Respondent argues that even if Petitioner's claims were timely, the Panel exceeded its authority and manifestly disregarded the law when it awarded Petitioner an "extra-contractual" remedy based on the Panel's "own personal views of 'fairness.'"  (*Id.* at 27).  As detailed in the remainder of this Opinion, neither of these arguments prevails in the face of the Court's duty to confirm arbitration awards in all but the narrowest circumstances.

1.  **The Arbitrators Did Not Exceed Their Authority or Manifestly Disregard the Law When They Refused to Dismiss Petitioner's Claims as Untimely**

Respondent argues first that the Panel exceeded its authority and manifestly disregarded the law when it "failed to ... dismiss Garrity's untimely claims." (Resp. Opp. 20). In particular, Respondent asserts that, under the clear and unambiguous meaning of the EDRP, Petitioner's claims were required to have been filed within six months after they accrued or within the applicable statute of limitations. Having been filed five years after the alleged breach of contract, Respondent contends that Petitioner's claims were barred by the statutes of limitations of the District of Columbia, Maryland, *and* New York. Respondent argues that, in consequence, the Panel had "no legal or contractual basis to deny Credit Suisse's motion to dismiss Garrity's untimely claims." (*Id.*).

Respondent's arguments impermissibly attack the Panel's conclusions, not the scope of its authority. Instructed by § 10(a)(4) of the FAA, a court must focus on whether the arbitrator "had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." *DiRussa* v. *Dean Witter Reynolds Inc.*, 121 F.3d 818, 824 (2d Cir. 1997). "Thus, alleged legal errors, even those of a serious nature, will not give rise to the circumstances contemplated by § 10(a)(4)." *Miss Universe L.P.* v. *Monnin*, 952 F. Supp. 2d 591, 600 (S.D.N.Y 2013). "Accordingly, an arbitrator may exceed her authority by, first, considering issues beyond those the parties have submitted for her

consideration, or, second, reaching issues clearly prohibited by law or by the terms of the parties' agreement." *Jock*, 646 F.3d at 122.  Neither circumstance is present here.

As an initial matter, both parties concede that the timeliness determination was properly submitted to arbitration.  (Resp. Opp. 20 n.19). Moreover, neither party asserts that the Panel impermissibly considered issues beyond those submitted by the parties.  Rather, Respondent takes issue with the Panel's subsequent application and interpretation of the EDRP.  (*Id.* at 19-20).  On that issue, however, the Panel considered extensive arguments and materials filed by the parties, including:

- Respondent's December 10, 2021 motion to dismiss Petitioner's claims as time-barred, the supporting papers for which included relevant contracts, case law, applicable statutes of limitations, and prior arbitral decisions in support of the motion;

- Petitioner's February 11, 2021 response in opposition, which response asserted the inapplicability of statutes of limitation in arbitration, and, in the alternative, the applicability of New York's general six-year statute of limitation;

- Respondent's March 11, 2022 reply in further support of its motion to dismiss;

- Respondent's November 28, 2022 renewed motion to dismiss on timeliness grounds; and

- Respondent's December 2022 post-hearing submissions following the Panel's denial of Respondent's renewed motion to dismiss, which submissions included new arguments concerning the effects of the EDRP on Petitioner's claims.

Based on these materials, the Panel twice considered and twice denied Respondent's motions to dismiss Petitioner's claims as untimely.

There is no evidence that during its consideration of the timeliness issue, the Panel reached issues clearly prohibited by law or by the terms of the parties' agreements. To the former point, arbitrators routinely make timeliness determinations. *See BG Grp., PLC* v. *Republic of Argentina*, 572 U.S. 25, 34-35 (2014) ("courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration," including time limits); *see also Howsam* v. *Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002) (stating that timeliness determinations are "presumptively for the arbitrator" to decide). And to the latter point, nothing in the parties' contractual agreements expressly prohibited the Panel from doing so.

Likewise, there is no evidence that the Panel manifestly disregarded the law. As noted, manifest disregard of the law requires "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." *Westerbeke Corp.*, 304 F.3d at 208. In matters of contract interpretation, deference to the arbitrator's interpretation is especially strong. "As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, a court's conviction that the arbitrator has committed serious error in resolving the disputed issue does not suffice to overturn his decision." *ReliaStar*, 564 F.3d at 86 (internal quotation marks omitted); *see also Schwartz*, 665 F.3d at 452

17

("[I]nterpretation of the contract terms is within the province of the arbitrator and will not be overruled simply because we disagree with that interpretation. If the arbitrator has provided even a barely colorable justification for his or her interpretation of the contract, the award must stand." (internal quotation marks, alternation, and citation omitted)).

Here, the Court finds that the Panel — acting within its scope of authority — reviewed and considered the relevant case law and contractual provisions, heard arguments and, based on the evidence presented, "construe[d] or appl[ied]" the EDRP's time-limitation clause to the relevant facts. *ReliaStar*, 564 F.3d at 86. In denying Respondent's motion to dismiss Petitioner's claims as time-barred, the Panel could have concluded, among other things, that the FINRA Code in fact superseded the EDRP, that the EDRP had been waived, or that the relevant statute of limitations, when applied, did not in fact bar Petitioner's claims. Any one of these conclusions would suffice to demonstrate a "barely colorable justification" for the Panel's interpretation of the contract. *Schwartz*, 665 F.3d at 452.

### 2. The Arbitrators Did Not Exceed Their Authority When They Rendered the Award

Respondent asserts in the alternative that even if the arbitration were timely filed, the Panel exceeded its authority and manifestly disregarded the law when it awarded an "extra-contractual remedy." (Resp. Opp. 27). By way of background, FINRA mandates that employers completely and accurately set forth in FINRA's Form U-5 the circumstances under which a registered person left their employ. Respondent concludes that because the Panel did not direct

Credit Suisse to modify the Form U-5, which characterized Petitioner's departure as "voluntary" — and, indeed, expressly denied Petitioner's request that it do so — the Panel must have found "as a fact" that Petitioner resigned voluntarily. (*Id.*). Accordingly, Respondent argues the Panel's award is "irreconcilable" with its finding that Petitioner voluntarily resigned. (*Id.* at 29-30).

Separately, Respondent argues that Petitioner's remedy was not based on the express terms of any contracts between the parties but rather on the Panel's "own personal view[] of 'fairness.'" (Resp. Opp. 27). Respondent maintains that the Panel's Award mimics the cash payments that Credit Suisse paid as an incentive to its former employees to join Wells Fargo. Because Petitioner chose not to participate in that process, Respondent argues that he was limited to recovery only for claims based on Credit Suisse's alleged breach of obligations owed under Section 4 of the Award Certificate. (*Id.* at 27-28).

As stated above, in assessing whether an arbitrator exceeded her authority, the Court does not focus on whether she correctly decided the issue, but instead simply determines whether the arbitrator considered issues beyond those submitted for her consideration or reached issues clearly prohibited by law or the terms of the arbitral agreement. *See Jock*, 646 F.3d at 122. As this dispute was properly submitted to the Arbitrators, their determination must be confirmed unless they failed to offer "'a barely colorable justification for the outcome reached.'" *Id.* (quoting *ReliaStar,* 564 F.3d at 86).

The Court has no trouble concluding that the basis of the Award is at least colorable.  As an initial matter, nothing in the parties' arbitration agreement required the Panel to amend the Form U-5 in order to award Petitioner monetary damages.  Among other possibilities, the Panel could have determined that the Petitioner was terminated (either involuntarily or constructively), but that amending the Form U-5 to reflect that determination was not relief appropriate under the circumstances; that so much time had passed that amendment of the Form U-5 would not serve any interest; or that the Panel was not presented with the authority requiring it to grant that form of relief.  Such findings surpass the degree of reasoning that courts require to confirm an arbitration award.  *See D.H. Blair & Co.*, 462 F.3d at 110 ("The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." (internal quotation marks omitted)).

The fact that Petitioner's award allegedly "mimicked" the Onboarding Award is not a basis for setting it aside.  Petitioner submitted ample evidence in support of his damages claim to justify the Panel's Award, including testimony on industry standards, practices for compensation, and a detailed valuation calculation based on the value of the Petitioner's cancelled deferred shares.  (Pet. 56.1 ¶¶ 25-27; Resp. 56.1 ¶¶ 25-27, 119-133).  Indeed, the question of damages was heavily litigated across the parties' pleadings, discovery, pre-hearing briefs, closing arguments, and post-hearing briefs. Accordingly, the Court finds that the grounds for the Award are readily

discernible and surpass the degree of reasoning that courts required to confirm an arbitration award.

## CONCLUSION

For the reasons set forth above, Petitioner's motion for summary judgement is GRANTED as follows:  The Clerk of the Court is directed to enter judgment in favor of Petitioner in the amount of $1,347,719.09, the outstanding balance due under the Award.  Pre-judgement interest will accrue from the time of the Award through the date of this Opinion at the statutory rate pursuant to N.Y. C.P.L.R. §5004.  Post-judgment interest will accrue at the statutory rate pursuant to 28 U.S.C. § 1961.  Respondent's cross-motion for summary judgment is DENIED.

The Clerk of the Court is directed to docket this Opinion in Case Numbers 23 Civ. 1457 and 23 Civ. 1830, and then to terminate all pending motions, adjourn all remaining dates, and close the two cases.

SO ORDERED.

Dated:   November 16, 2023
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge